UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JULIE ANNE G.,<br><br>Plaintiff,<br><br>v.<br><br>NANCY A. BERRYHILL, Acting Commissioner of Social Security,[1]<br><br>Defendant. | Case No. 8:17-cv-00926-KES<br><br>MEMORANDUM OPINION AND ORDER |

Plaintiff Julie Anne G. ("Plaintiff") appeals the final decision of the Social Security Commissioner denying her applications for disability insurance benefits ("DIB") and supplemental security income ("SSI"). For the reasons discussed below, the Commissioner's decision is AFFIRMED.

## I.

## BACKGROUND

On October 6, 2015, Plaintiff applied for DIB and SSI, alleging disability commencing August 23, 2015. Administrative Record ("AR") 179-83. On

---

[1] Effective November 17, 2017, Ms. Berryhill's new title is "Deputy Commissioner for Operations, performing the duties and functions not reserved to the Commissioner of Social Security."

1

November 29, 2016, an Administrative Law Judge ("ALJ") conducted a hearing at which Plaintiff, who was represented by counsel, appeared and testified, as did a vocational expert ("VE"). AR 36-54.

On January 19, 2017, the ALJ issued a decision denying Plaintiff's applications. AR 15-35. The ALJ found that Plaintiff suffered from medically determinable severe impairments consisting of bilateral carpal tunnel syndrome, degenerative disc disease of the cervical and lumbar spines, neuropathy, fibromyalgia, obesity, and depressive disorder. AR 21. Despite these impairments, the ALJ determined that Plaintiff had the residual functional capacity ("RFC") to perform a limited range of light work, as follows:

> lift or carry twenty pounds occasionally and ten pounds frequently;
> stand or walk, with normal breaks, for six hours and sit, with normal breaks, for six hours in an eight-hour work day; occasionally perform postural activities except no climbing ladders, ropes, or scaffolds; never work at unprotected heights or around dangerous machinery; frequently push or pull with the upper extremities, bilaterally; frequently handle or finger with the upper extremities, bilaterally; frequently use foot pedals; and is limited to simple, routine tasks.

AR 23. "Frequently" means up to two-thirds of the time, whereas "occasionally" means up to one-third of the time. Social Security Ruling ("SSR") 83-10.

Based on this RFC and the VE's testimony, the ALJ determined that Plaintiff could not perform her past relevant work as a school bus driver, cashier, or forklift driver. AR 29. The ALJ found, however, that Plaintiff could work as a sales attendant or office helper. AR 29-30. The ALJ therefore concluded that Plaintiff was not disabled. AR 30.

## II.
## STANDARD OF REVIEW

A district court may review the Commissioner's decision to deny benefits.

The ALJ's findings and decision should be upheld if they are free from legal error and are supported by substantial evidence based on the record as a whole. 42 U.S.C. § 405(g); Richardson v. Perales, 402 U.S. 389, 401 (1971); Parra v. Astrue, 481 F.3d 742, 746 (9th Cir. 2007). Substantial evidence means such relevant evidence as a reasonable person might accept as adequate to support a conclusion. Richardson, 402 U.S. at 401; Lingenfelter v. Astrue, 504 F.3d 1028, 1035 (9th Cir. 2007). It is more than a scintilla, but less than a preponderance. Lingenfelter, 504 F.3d at 1035 (citing Robbins v. Comm'r of SSA, 466 F.3d 880, 882 (9th Cir. 2006)). To determine whether substantial evidence supports a finding, the reviewing court "must review the administrative record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion." Reddick v. Chater, 157 F.3d 715, 720 (9th Cir. 1998). "If the evidence can reasonably support either affirming or reversing," the reviewing court "may not substitute its judgment" for that of the Commissioner. Id. at 720-21.

"A decision of the ALJ will not be reversed for errors that are harmless." Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005). Generally, an error is harmless if it either "occurred during a procedure or step the ALJ was not required to perform," or if it "was inconsequential to the ultimate nondisability determination." Stout v. Comm'r of SSA, 454 F.3d 1050, 1055 (9th Cir. 2006).

### III.
### ISSUE PRESENTED

Plaintiff's appeal presents the sole issue of whether the ALJ properly evaluated the opinions of her treating neurologist, Dr. Kong Truong. (Dkt. 22, Joint Stipulation ["JS"] at 5.) Plaintiff contends that the ALJ "failed to provide specific and legitimate reasons in giving Dr. Truong's opinion little weight." (Id.)

## IV.

## DISCUSSION

A. **Rules for Weighing Conflicting Medical Evidence.**

In deciding how to resolve conflicts between medical opinions, the ALJ must consider that there are three types of physicians who may offer opinions in Social Security cases: (1) those who directly treated the plaintiff, (2) those who examined but did not treat the plaintiff, and (3) those who did not treat or examine the plaintiff. See 20 C.F.R. §§ 404.1527(c), 416.927(c); Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995). A treating physician's opinion is generally entitled to more weight than that of an examining physician, which is generally entitled to more weight than that of a non-examining physician. Lester, 81 F.3d at 830. If the treating physician's opinion is uncontroverted by another doctor, then it may be rejected only for "clear and convincing" reasons. Id. (citing Baxter v. Sullivan, 923 F.2d 1391, 1396 (9th Cir. 1991)). The ALJ, however, need only give "specific and legitimate" reasons for rejecting a treating physician's opinion in favor of a non-treating physician's contradictory opinion. Orn v. Astrue, 495 F.3d 625, 632 (9th Cir. 2007) (citing Reddick v. Chater, 157 F.3d 715, 725 (9th Cir. 1998)); Lester, 81 F.3d at 830-31 (citing Murray v. Heckler, 722 F.2d 499, 502 (9th Cir.1983)).

Even a treating physician's opinion that is not well-supported by medically acceptable clinical and laboratory diagnostic techniques, or is inconsistent with other substantial evidence in the record, is not entitled to controlling weight. Orn v. Astrue, 495 F.3d 625, 631-32 (9th Cir. 2007) (quoting SSR 96-2p). In that event, the ALJ must consider the factors listed in 20 C.F.R. §§ 404.1527(c) and 416.927(c) to determine what weight to accord the opinion. See SSR 96-2p (stating that a finding that a treating physician's opinion is not well supported or inconsistent with other substantial evidence in the record "means only that the opinion is not entitled to 'controlling weight,' not that the opinion should be

4

rejected. Treating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in 20 C.F.R. § 404.1527."). The factors include: (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship; (3) supportability of the opinion; (4) consistency of the opinion with the record as a whole; (5) the specialization of the treating source; and (6) any other factors brought to the ALJ's attention that tend to support or contradict the opinion. 20 C.F.R. §§ 404.1527(c), 416.927(c).

Here, opinions in Dr. Truong's Physical Residual Functional Capacity Questionnaire ("RFC Questionnaire" at AR 514-20 [duplicate at AR 525-31]) were contradicted by those of orthopedic consultative examiner, Dr. Zaven Bilezikjian (AR 326-29). The ALJ, therefore, needed to provide "specific and legitimate" reasons for not giving Dr. Truong's opinions controlling weight.

B. **Summary of Dr. Truong's Opinions.**

    **1. The RFC Questionnaire.**

On November 18, 2016, Dr. Truong completed a RFC Questionnaire in support of Plaintiff's claim for disability. AR 514-20. Dr. Truong had treated Plaintiff for four months, seeing her "every two months." AR 514. Treating records (discussed in detail below) show that Plaintiff had an initial consultation with Dr. Truong on July 26, 2016 (AR 533), a follow-up appointment to review lab results on September 27, 2016 (AR 538), a third appointment for nerve conduction testing on October 24, 2016 (AR 543), and a fourth appointment to review the test results on November 11, 2016 (AR 551). Thus, Dr. Truong had seen Plaintiff three or four times prior to completing the RFC Questionnaire. Dr. Truong indicated that his opinions were valid only as of September 27, 2016, which is the date of Plaintiff's second appointment. AR 514, 538.

Dr. Truong offered opinions of Plaintiff's exertional limitations quite similar to the RFC assessed by the ALJ, but with some differences, as shown in the

following comparison chart:

| Activity | Dr. Truong | ALJ's RFC (AR 23) |
|---|---|---|
| Lifting/Carrying | 50 pounds rarely, 20 pounds or less occasionally, no weight frequently (AR 518) | 20 pounds occasionally, 10 pounds frequently |
| Walking/Standing | 2 hours, with breaks every 45 minutes or more frequently if needed due to pain (AR 517-18) | 6 hours, with normal breaks |
| Sitting | 6 hours, shifting at will to standing (AR 517-18) | 6 hours, with normal breaks |
| Postural Activities | Occasionally (AR 518-19) | Occasionally |
| Climbing | Never (AR 519) | Never |
| Pushing/Pulling | Occasionally (AR 519) | Frequently |
| Handling/Fingering | Occasionally (AR 519) | Frequently |
| Using Foot Pedals | Frequently (AR 520) | Frequently |

Dr. Truong also opined that Plaintiff requires work that allows her to take unscheduled breaks throughout the workday. AR 518. Dr. Truong could not specify the frequency or duration of the required breaks, stating instead that they would depend on Plaintiff's pain level. Id. Dr. Truong indicated that the electrodiagnostic examination showed evidence of carpal tunnel syndrome ("CTS") and "prolonged" use of her hands may lead to "worsening of her reported symptoms (numbness and tingling)." AR 519. Dr. Truong opined that Plaintiff's impairments would cause good days and bad days, that her experience of pain or other symptoms would "constantly interfere" with her attention and concentration, and that she would miss more than four days of work each month. AR 516, 520.

## 2. Summary of Dr. Truong's Treating Notes.

### a. July 26, 2018 Initial Consultation (AR 533).

Plaintiff reported that she had "generalized pain" for the last thirty years, including "weakness in the hands, with difficulty to grip, due to the pain." AR 533. She also reported "episodes of numbness in hands and feet," but those were "rare" and her "pain is alleviated with pain medications." Id. At the time, Plaintiff was not taking any prescription pain medication. AR 534. Under ROS (review of symptoms), Dr. Truong noted, "tingling in hands, occasionally." AR 535.

Plaintiff told Dr. Truong that she was concerned she might have multiple sclerosis ("MS") and brought a 2015 CD with imaging of her brain, cervical spine, and lumbar spine for him to review. AR 533. He did so, and later did not indicate that Plaintiff had any issues with her cervical or lumbar spine. AR 515, 533.

Dr. Truong conducted a physical examination of Plaintiff. He noted that palpation of Plaintiff's thighs elicited pain, but not her arms or calves. AR 535. He noted normal muscle bulk and tone. Id. He found no deficits with Plaintiff's wrist extension, wrist flexion, finger flexion, APB ("adductor pollicis brevis," a hand muscle), FDI ("first dorsal interosseous," another hand muscle), or ADM ("abductor digiti minimi," a third hand muscle). Id. Dr. Truong concluded that the etiology (i.e., cause) of Plaintiff's reported pain was "unclear," but he saw "no clear weakness on exam" and called the exam "unremarkable." AR 536.

Dr. Truong noted that Plaintiff had been seen by a rheumatologist, Dr. Ho, in December 2015, and he recommended that she follow up with Dr. Ho. AR 534, 536. He also ordered some lab tests and scheduled a follow-up appointment out two months. Id.

### b. September 27, 2016 Appointment (AR 538).

Plaintiff reported continuing pain and "weakness in the hands, with difficulty to grip [sic], due to the pain." AR 538. She again complained of "intermittent numbness and tingling" in both the "feet and arms." Id.

Dr. Truong advised Plaintiff that the results of her lab tests were "largely unremarkable." AR 538. He noted that Plaintiff was taking naproxen for pain and omeprazole for heartburn. AR 539. He repeated the same findings about muscle strength and palpations. AR 540. He repeated that he saw "no clear weakness on examination." AR 542. Plaintiff continued to inquire about MS, but he opined that her "clinical history and unremarkable neurological examination would make the probability of MS low." Id. He ordered a nerve conduction study to evaluate her report of intermittent numbness and tingling in her hands and legs. Id. He also noted that she had not yet followed up with the rheumatologist. AR 538.

          c. October 24, 2016 Appointment (AR 543).

These records reflect the results of the nerve conduction study which included "sensory conduction slowing and axon loss … judged to be severe in degree" for Plaintiff's right wrist, and "sensory and motor slowing … judged to be moderate in degree" for Plaintiff's left wrist. AR 543. Some other test results were normal. AR 544. The report concluded, "These findings may be consistent with carpal tunnel syndrome. Clinical correlation is advised." AR 543. The tests also showed polyneuropathy affecting Plaintiff's feet. Id.

          d. November 11, 2016 Appointment (AR 548).

Dr. Truong noted that the nerve conduction study "showed bilateral carpal tunnel syndrome and sensory predominant polyneuropathy in the feet." AR 548. He also characterized the tests as showing "evidence of median neuropathy suggestive of bilateral carpal tunnel syndrome." AR 551. He "discussed with patient about trial of conservative therapy with wearing wrist braces at night." Id. He also started Plaintiff on a trial of the drug Lyrica to help with her symptoms. Id.

Dr. Truong concluded that Plaintiff's description of variable pain in her body was still "of unclear etiology." AR 552. While nerve conduction testing "showed polyneuropathy in the lower extremities and carpal tunnel syndrome in

8

the hands" and "these may be contributing to her symptoms, the clinical description of her symptoms would be atypical for polyneuropathy or carpal tunnel syndrome." Id. Plaintiff was referred to a psychiatrist for better management of her anxiety. Id.

C. **The ALJ's Evaluation of the Conflicting Medical Evidence.**

Per the summaries above, the most significant differences between Dr. Truong's RFC Questionnaire and the assessed RFC are (1) whether Plaintiff could perform fingering and handling (i.e., manipulative activities) frequently or only occasionally, (2) whether Plaintiff could stand/walk for six hours each workday, or only two, and (3) whether Plaintiff's pain management required extensive work breaks and absenteeism. The alternative jobs identified by the VE require "frequent" manipulative activities and standing/walking more than two hours/day. AR 30. The VE also testified that someone who misses four or more days of work each month and who cannot "persist" through an 8-hour workday (i.e., takes unscheduled breaks of unspecified duration) could not be employed. AR 52.

The ALJ gave Dr. Truong's opinion "little weight" for at least two reasons. AR 28. First, the ALJ stated that even though nerve conduction testing showed evidence of CTS, "the evidence in the record (including a lack of neurological deficits or other abnormalities, such as significantly decreased range of motion on examination) does not support [Dr. Truong's] limitation of only occasional manipulative activities." AR 28. Second, the ALJ found that "in the questionnaire, Dr. Truong fails to provide the objective signs to support his opinion; and his findings on examination are not corroborative (AR 514-20 [RFC Questionnaire], AR 533-55 [treating notes].)" AR 28. The ALJ summarized Dr. Truong's treating notes earlier in his decision. AR 26-27.

There are three other medical opinions in the record regarding Plaintiff's physical impairments by (1) orthopedic consultative examiner Dr. Bilezikjian (AR 326-29), and (2) state agency physicians R. Dwyer, M.D. (AR 74-76) and (3) C.

Scott, M.D. (AR 103-04). All three physicians opined that Plaintiff could walk/stand for six hours/day, engage in frequent postural activities, and perform work with no manipulative limitations. Id. The ALJ gave these three opinions little weight for overstating Plaintiff's lifting abilities. AR 22-23.

Regarding manipulative activities, the ALJ landed in the middle, determining that Plaintiff could do "frequent" fingering and handling (AR 23) as compared to "occasional" (per Dr. Truong) or "unlimited" (per Drs. Bilezikjian, Dwyer, and Scott). Regarding walking/standing, the ALJ determined that six hours/day was better supported than two hours/day based on the medical evidence (i.e., Plaintiff's general lack of "deficits" or "abnormalities" during physical examinations) and Plaintiff's daily activities. AR 82.

D. **Analysis of the ALJ's Reasons for Not Giving Dr. Truong's RFC Questionnaire Controlling Weight.**

    **1. Lack of Corroboration from Dr. Truong's Treating Notes.**

Plaintiff argues that because Dr. Truong's treating notes confirm a diagnosis of CTS with some nerve conduction study results in the range of moderate and severe, Dr. Truong's treating notes support the opinions in his RFC Questionnaire. (JS at 9.) Being diagnosed with CTS, however, does not indicate any particular degree of functional limitation. In some cases, CTS may not affect a person's ability to do work-related activities at all, or it may affect that ability only minimally. See, e.g., Villa v. Colvin, 2013 U.S. Dist. LEXIS 25558, at *2 (E.D. Cal. Feb. 25, 2013) (upholding ALJ finding that CTS was non-severe).

Dr. Truong's treating notes consistently document "no weakness" and no muscle deficits on physical examination. AR 535-36. He conducted palpations to locate tender points, but he did not detect any arm pain. AR 535. He described Plaintiff's pain/tingling in her hands and feet as "intermittent" and "rare." AR 533. Experiencing merely "intermittent" or "rare" hand/foot pain with otherwise "unremarkable" physical examinations does not support needing to take unlimited

breaks at will to manage pain and missing four or more days of work every month.

Despite her unremarkable physical examinations, Dr. Truong limited Plaintiff to occasional neck movements in the same RFC Questionnaire in which he indicated that she did not have "significant limitation of motion" of her neck. Compare AR 515, 518. Indeed, he indicated that nearly all activities involving body movements (e.g., turning head, holding head static, reaching, twisting, stooping) were restricted to "occasional," even though such activities appear unrelated to the conditions for which he was treating Plaintiff, i.e., CTS and polyneuropathy in the lower extremities. In the RFC Questionnaire, he stated that Plaintiff's diagnosed impairments were consistent with her symptoms, but in his treating notes, he stated that Plaintiff's "description of her symptoms would be atypical for polyneuropathy or carpal tunnel syndrome." Compare AR 516, 552.

Plaintiff argues that Dr. Truong's limitation to two hours of daily walking/standing is consistent with his treating notes because Plaintiff's "Babinski sign was absent bilaterally" and she "exhibited decrement to vibration of bilateral toes." (JS at 9, citing AR 536, 550.) A positive Babinski sign occurs when the sole of the foot is stroked and the toes reflexively point up, as opposed to curving down which is normal. See https://en.wikipedia.org/wiki/Plantar_reflex. Thus, the absence of a Babinski sign indicates normal health, not an impairment. Regarding her toes, Dr. Truong noted, "decrement to vibration the level of the bilateral toes." AR 550. This is consistent with his diagnosis that Plaintiff suffers from polyneuropathy affecting her feet, but it does not indicate any degree of functional impairment. Per Dr. Truong, Plaintiff had a "normal" gait and could walk on her heels and walk a straight heel-to-toe line (tandem walking). AR 536, 541, 551. She had normal muscle tone and bulk with no noted muscle deficits. AR 535-36. She did not need an assistive device to ambulate. AR 529. Thus, Dr. Truong's treating notes do not support limiting Plaintiff to only two hours of daily walking/standing.

For these reasons, the ALJ did not commit legal error in citing lack of corroboration from his own treating notes as a basis for discounting some of Dr. Truong's more extreme opinions.

**2. Lack of Evidentiary Support for Manipulative Limitations.**

Dr. Troung limited Plaintiff's manipulative activities to "occasional," and the ALJ discounted this opinion citing lack of evidentiary support; Plaintiff argues that this was error. (JS at 6, citing AR 28.) Plaintiff points to three pieces of evidence that she contends show that she can only finger/handle occasionally.

First, Plaintiff argues that Dr. Troung's more restrictive assessment is supported by the "severe" and "moderate" motor slowing findings of the nerve conduction study. (Id. at 7, citing AR 543.) Plaintiff does not explain, however, why impaired nerve conduction in her hands (and thus slower motor movements) necessarily means that she can use her hands only occasionally, as opposed to frequently.

Second, Plaintiff points to Dr. Bilezikjian's 2015 report. (Id. at 9, citing AR 327.) He measured Plaintiff's grip strength using a Jamar dynamometer and recorded a grip strength of 30 pounds for all three right-hand attempts and 30-20-20 pounds for the three left-hand attempts. AR 327. While the left hand displayed less strength than the right, Plaintiff is right-hand dominant, and Dr. Bilezikjian concluded that his motor examination "reveal[ed] essentially normal strength." AR 327, 329. He also found that Plaintiff had engaged in "significant exaggeration" and Plaintiff's "use of hands is not restricted."[2] AR 326, 329.

Third, Plaintiff points to a treatment note from November 17, 2015, that "revealed numbness in her hands with an appointment with a neurologist." (JS at 7, citing AR 373.) The cited record is from an office visit with Dr. Illie Wu. AR

---

[2] Dr. Truong left blank the portion of the RFC Questionnaire requesting objective grip strength test results. AR 516.

12

373-77. Under "history," Dr. Wu recorded that Plaintiff complained of numbness in her hands and told her that she had an earlier appointment with a neurologist in March 2015. AR 373. Plaintiff reported pain at a level of 8/10, but Dr. Wu recorded that Plaintiff's "functional status has not changed" and Plaintiff was not taking any pain medication. AR 374-75. Regarding the reported tingling, Dr. Wu noted, "brain MRI is negative. Cervical and lumbar MRI pending results will call pt to discuss." AR 376. Ultimately, Dr. Truong reviewed the referenced cervical and lumbar MRI and did not opine that Plaintiff has any functional limitations caused by spinal impairments. AR 533, 526.

Thus, substantial evidence supports the ALJ's assertion that Dr. Truong's more restrictive opinion concerning Plaintiff's fingering/handling lacks support from other medical evidence of record.

## V.
## CONCLUSION

For the reasons stated above, IT IS ORDERED that judgment shall be entered AFFIRMING the decision of the Commissioner denying benefits.

DATED: June 21, 2018

_Karen E. Scott_
KAREN E. SCOTT
United States Magistrate Judge